**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**FULVIA ZUSTOVICH,**                          :
                                               :
                            **Plaintiff,**     :          **08 Civ. 6856 (HB)**
                                               :
            **-against-**                      :          **OPINION & ORDER**
                                               :
**HARVARD MAINTENANCE, INC.,**                 :
**SPC SERVICES, INC., SAGE REALTY**            :
**CORPORATION, SULO LULANAJ,**                 :
**and MURAT MELA,**                            :
                                               :
                            **Defendants.**    :
-------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

Plaintiff Fulvia Zustovich ("Zustovich") filed a Complaint in this Court raising various claims arising out of alleged discrimination on the basis of her national origin, race, age and retaliation against Defendants Harvard Maintenance, Inc. ("Harvard"), SPC Services, Inc. ("SPC"), Sage Realty Corporation ("Sage"), Sulo Lulanaj and Murat Mela (collectively, "Defendants"). Specifically, Zustovich brings the following claims: (1) national origin discrimination and retaliation under Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") against Defendants Harvard, SPC and Sage; (2) national origin and race discrimination and retaliation under 42 U.S.C. § 1981 against all Defendants; (3) national origin, race and age discrimination, hostile work environment and retaliation under the Executive Law of New York State, Article 15, § 296, against all Defendants; (4) national origin, race and age discrimination, hostile work environment and retaliation under the Human Rights Law of New York City, §§ 8-107 and 8-502 ("NYCHRL"), against all Defendants; and (5) intentional infliction of emotional distress against all Defendants. Defendants now move this Court to dismiss Zustovich's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. First, Defendants argue that Zustovich's Title VII claims must be dismissed because they are time-barred. Second, Defendants argue that all claims against all Defendants other than Harvard must be dismissed because Zustovich did not name those Defendants in her administrative complaint. Similarly, Defendants further argue that Zustovich's claims for race and age discrimination and hostile work environment based on age, race and national origin discrimination must be dismissed for failure to exhaust administrative remedies. Finally,

defendants argue that Zustovich's claims for race discrimination and hostile work environment must be dismissed for failure to state a cause of action upon which relief may be granted under Rule 12(b)(6).  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I.  FACTUAL BACKGROUND

Zustovich is a female of Italian ethnic origin and descent, who was 62 years old at the time she filed her Complaint in this Court.  Compl. ¶ 16.  Zustovich has limited education and command of the English language; she can speak and read limited English, speaking with a pronounced Italian accent, but has particular difficulty writing in English.  *Id.* ¶ 22; Declaration of Fulvia Zustovich ("Zustovich Decl.") ¶ 2.

In January 1996, Zustovich was hired as a cleaner at 747 Third Avenue (the "Building"), which is owned and managed by Defendant Sage.  Compl. ¶¶ 13, 17.  Defendant SPC, a commercial cleaning and janitorial company, was contracted by Sage to provide maintenance services at the Building.  *See id.* ¶ 11.  In turn, SPC subcontracted janitorial work to Defendant Harvard.  *See id.* ¶ 9.  Although Zustovich officially was an employee of Harvard, Sage, SPC and Harvard exercised some measure of control over plaintiff's employment and the ultimate decision to terminate her employment.  *See id.* ¶¶ 9, 11, 13.  At all times relevant to the Complaint, Zustovich's direct supervisor was Defendant Lulanaj, who was a Project Manager of the Cleaning Division of SPC.  *See id.* ¶¶ 14, 20.  Defendant Mela, who also exercised control over Zustovich's employment, was at all relevant times employed as Assistant Vice President of Harvard.  *Id.* ¶ 15.  Lulanaj and Mela are both of Albanian ethnic origin.  *Id.* ¶¶ 15, 20.

Zustovich alleges, without contradiction, that at all times through her employment, she has had an excellent job performance and attendance record and received praise for superior job performance from various tenants.  *Id.* ¶¶ 18-19.  However, despite all this, Zustovich alleges that Lulanaj favored younger employees of Albanian ethnicity and decent.  *Id.* ¶ 20-21.

In September 2005, after returning from a vacation, Zustovich complained to Lulanaj that the employee who had been assigned to her areas, who was Albanian, had not done her job, leading to an unreasonable increase in Zustovich's workload.  *Id.* ¶ 23.  Lulanaj failed to take any corrective action against the Albanian employee, instead telling Zustovich, "It's your job.  Do it."  *Id.* ¶ 24.  In October 2005, Zustovich alleges that Defendants accused her falsely of not properly cleaning the floors in her designated areas, and she was subsequently issued a

disciplinary notice. *Id.* ¶ 25. Zustovich alleges that the accusations were false, and that the disciplinary notice was issued in retaliation for her complaints that Lulanaj had engaged in favoritism toward Albanian employees. *Id.* ¶ 26. Zustovich demanded that Harvard management retract the disciplinary notice and investigate the alleged favoritism in favor of Albanian employees, but Harvard refused to do so; it was only after Zustovich lodged an official grievance with her Union that Harvard agreed to withdraw the disciplinary notice. *Id.* ¶ 27-28.

Approximately one year after her initial complaint to Lulanaj, in September 2006, Zustovich was transferred from her regular post on the 23rd floor of the Building to another floor. *Id.* ¶ 29. Soon thereafter, the tenant on the 23rd floor, Silver Co., specifically requested that Zustovich be returned to the floor due to her excellent job performance. Lulanaj refused to authorize her return. *Id.* ¶¶ 29-30. On October 18, 2006, Mela, with Lulanaj's knowledge, encouragement and support, terminated Zustovich's employment "effective immediately" on the grounds that he had received tenant complaints. *Id.* ¶ 31. That same day, Zustovich complained to Mela that she believed her termination to be the result of discrimination, and that if she had been Albanian she would not have been terminated; Mela failed to investigate her allegations of discrimination or otherwise to take remedial action. *Id.* ¶ 34. Zustovich then filed a grievance through her Union, after which her employment was reinstated with back pay and "displacement pay" of upwards of $8,000. *See id.* ¶ 35. Upon her return to work, Zustovich was transferred to another building, 420 Fifth Avenue, and alleges that her work assignments became more onerous and that she was denied building seniority, denying her the benefit of preference in such things as vacation scheduling. *See id.* ¶ 36.

Zustovich alleges that after her termination and removal from the Building, her position was filled by an Albanian woman in her thirties. *Id.* ¶ 38. Further, Zustovich alleges that, as of the filing of her Complaint, all but two employees employed as cleaners by Harvard at the Building were Albanian, and that despite complaints of inferior work performance and attendance of various Albanian employees, no Albanian employees were ever issued disciplinary notices. *See id.* ¶ 40, 42. Specifically, Zustovich alleges that Albanian employees who committed serious violations of workplace rules, such as sleeping or smoking on the job, making personal telephone calls, taking unauthorized breaks and destroying tenant property, were not disciplined or terminated. *Id.* ¶ 43, 44. In addition, Zustovich alleges that Albanian employees were afforded privileges not extended to non-Albanian employees, including preference in arranging vacation time without regard to building seniority. *Id.* ¶ 44.

Based on these allegations, Zustovich claims that during the period of her employment, Defendants "condoned and encouraged a policy and practice of discriminating against and harassing [her] on the basis of her race, ethnic origin, national origin and age; subjected plaintiff to a hostile work environment; failed to provide plaintiff with an adequate means of complaint and redress; and retaliated against plaintiff." *Id.* ¶ 48. As a result of this discrimination, Zustovich allegedly suffered humiliation, depression, severe anxiety, panic attacks, chest pain, hypertension, extreme emotional distress and a loss of income. *Id.* ¶ 49.

On or about November 7, 2006, Zustovich, proceeding *pro se*, filed a charge with the New York State Division of Human Rights ("DHR"), which was dual-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation by Harvard based on her Italian national origin. *See* Compl. ¶ 4; Zustovich Decl. ¶ 3. At the time of the filing of her agency complaint, Zustovich met with a human rights specialist at the DHR and orally described the factual circumstances underlying her claims as best she could; the specialist prepared the charge based on Zustovich's description, and Zustovich reviewed the charge and signed it. Zustovich Decl. ¶ 3. The agency complaint detailed the discrimination Zustovich allegedly suffered at the hands of Lulanaj and Mela at the Building. *Id.* ¶ 4. At the time of her agency complaint, Zustovich alleges that she did not know, nor did she have any reason to know, that Lulanaj was employed by SPC and not Harvard. *Id.* Indeed, at her Union grievance hearing in 2006, she was informed that Mela, a Harvard employee, had "hired" Lulanaj; this led Zustovich to believe that Lulanaj, too, was employed by Harvard. *Id.* Only after the filing of her agency complaint did she learn that it had been Sage Realty, the management company of the Building that had "demanded that Ms. Zustovich be removed from the premises." *Id.*

During the investigation of the DHR charge, a conference was held in which Lulanaj and Defendants' counsel participated. *Id.* ¶ 5. Also present was Linda Ayers, a tenant of the 23rd floor of the Building, who appeared as a witness on Zustovich's behalf. *See id.* Ms. Ayers informed the DHR investigator that Silver Co. never complained about Zustovich, and that Silver Co. in fact requested that Zustovich be reassigned to the 23rd floor due to her excellent work. *Id.* at ¶ 6. Ayers also told the investigator that after Zustovich was removed from the 23rd floor, she was replaced by a younger Albanian employee. *Id.* During that conference, the DHR specialist who had assisted in preparing the agency charge was advised of the shared responsibilities of Zustovich's supervisors, Lulanaj and Mela, over her employment; the identity of their respective

employers, Harvard and SPC; and the role that Sage allegedly played in her termination.  *Id.* at ¶ 5.  The DHR specialist did not advise Zustovich that the caption of her DHR charge, which named only Harvard, should be revised to include the other parties involved.  *Id.*  It was therefore Zustovich's understanding that all persons involved were adequately named and/or represented at the proceeding.  *See id.*

On or about January 28, 2008, the DHR issued a determination finding that there was probable cause to believe Defendants had engaged in discriminatory practices based on Zustovich's complaint.  Compl. ¶ 5.  Zustovich was informed that a public hearing was scheduled for April 14, 2008, and in March 2008, she retained counsel to assist her in removing her claims from the DHR and EEOC and to pursue them in federal court.  Zustovich Decl. ¶ 8.  Immediately upon retention, Zustovich's counsel requested that the DHR hearing be adjourned by sixty days to permit Zustovich to request a notice of right to sue from the EEOC.  Declaration of Molly Smithson ("Smithson Decl.") ¶ 5, Ex. C.  Upon Zustovich's request, the EEOC terminated its processing of the DHR complaint and issued a Notice of Right to Sue ("Right-to-Sue Letter") on April 3, 2008.  Declaration of Perry S. Heidecker ("Heidecker Decl.") ¶ 19, Ex. B.  On April 8, 2008, Zustovich's counsel filed a written request with the DHR to dismiss Zustovich's agency complaint for administrative convenience so that Zustovich could pursue her claims in federal court.  *Id.* ¶ 21, Ex. B.  By letter dated April 9, 2008, the DHR advised the parties that it was contemplating dismissal for administrative convenience and advised the parties that any objections to such dismissal were to be filed within fifteen days.  Smithson Decl. ¶ 8, Ex. E.  Defendants' counsel wrote to the Administrative Law Judge presiding over Zustovich's complaint to oppose dismissal.  *Id.* ¶ 10.  The DHR granted the request for dismissal on May 1, 2008.  *Id.* ¶ 11, Ex. H.  Following the ultimate dismissal of the DHR complaint, the EEOC sent a second Right-to-Sue Letter, dated May 14, 2008, less than 90-days after the first-issued Right-to-Sue Letter.  *See id.* ¶ 12, Ex. I.  Upon inquiry from the parties, the EEOC stated that it had no record of the issuance of the April 3 Right-to-Sue Letter, and had no copy of that letter in its files.  *Id.* ¶ 20, Ex. L.  Indeed, the EEOC wrote:

> I am forced to conclude that we neglected to follow correct procedures when this Notice of Right to Sue was mailed out for our office . . . Our records do reflect, however, the issuance of a Notice of Right to Sue letter dated May 14, 2008, which is accurately reflected in our records.  *The Commission will consider the Notice of Right to Sue Letter dated May 14, 2008 as the official*

> *Notice of Right to Sue letter issued by the Commission for the*
> *above-referenced complaint.*

*Id.* (emphasis added).  Zustovich filed her Complaint in this Court on July 31, 2008 – 76 days
after the issuance of the second Right-to-Sue Letter.

### III.  DISCUSSION

**A.      Legal Standard on a Motion to Dismiss**

To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim
to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)
(retiring previous pleading standard, under *Conley v. Gibson*, 355 U.S. 41 (1957), that required
denial of a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no
set of facts in support of his claim which would entitle him to relief").  For the purposes of a
motion to dismiss pursuant to Rule 12(b)(6), a court must accept the facts alleged in the
complaint as true, even if doubtful in fact, and draw all reasonable inferences in favor of the
nonmoving party.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008); *Cosmas v.
Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).  However, "[c]onclusory allegations or legal conclusions
masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss."  *Achtman
v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 227 (2d Cir. 2006).  In deciding a motion to
dismiss, the Court must apply a "flexible 'plausibility standard,' which obliges a pleader to
amplify a claim with some factual allegations in those contexts where such amplification is
needed to render the claim plausible."  *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).  This
standard requires "factual allegations sufficient 'to raise a right to relief above the speculative
level.'"  *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (quoting *Twombly*, 550 U.S. at
555).

In the employment discrimination context, the U.S. Supreme Court held in *Swierkiewicz
v. Sorema N.A.*, 534 U.S. 506 (2002), that a complaint need not include specific facts
establishing a *prima facie* case, but must include only a "short and plain statement of the claim
showing that the pleader is entitled to relief."  *Id.* at 508 (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at
511 ("the ordinary rules for assessing the sufficiency of a complaint apply" in the employment
discrimination context).  Thus, the liberal pleading standard of Rule 8(a) requires the plaintiff to
only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it
rests."  *Id.* at 512 (internal citation omitted).  However, as the Second Circuit recently held, the

holding in *Swierkiewicz* does not mean that "[p]laintiffs bear no burden at the pleading stage."
*Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006).  Rather, "a
plaintiff must allege . . . those facts necessary to a finding of liability . . . [and] a plaintiff's
allegations, accepted as true, must be sufficient to establish liability."  *Id.* at 343-44 (internal
citations and emphasis omitted).  Thus, "while the pleading standard is a liberal one, bald
assertions and conclusions of law will not suffice."  *Id.* at 344 (internal citations omitted); *see
also Russo-Lubrano v. Brooklyn Fed. Savings Bank*, CV-06-0672 (CPS), 2007 U.S. Dist. LEXIS
2646 (E.D.N.Y. Jan. 12, 2007).

>        In considering a motion to dismiss, the Court may consider documents attached as an
exhibit to the complaint or incorporated into the complaint by reference, documents that are
integral to the plaintiff's claims, even if not explicitly incorporated by reference, and matters of
which judicial notice may be taken.  *See* Fed. R. Civ. P. 10(c); *De Jesus v. Sears, Roebuck &
Co.*, 87 F.3d 65, 69 (2d Cir. 1996); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48
(2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992); *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d
40, 44 (2d Cir. 1991); *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273,
275 (S.D.N.Y. 2002).  When documents are integral, known of and possessed by the plaintiff,
and there is no dispute as to their authenticity, the Court may consider them on a motion to
dismiss.  *Thomas*, 232 F. Supp. 2d at 276 (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 & n.4
(9th Cir. 1998); *Cortec*, 949 F.2d at 48).  Moreover, the Court may consider the records of state
administrative procedures on a motion to dismiss, as it may take judicial notice of documents of
public record.  *Id.* (citations omitted).

**B.**     **Zustovich's Title VII Claims are Not Time-Barred**

>        Title VII requires that a plaintiff file a complaint of discrimination in a United States
district court within 90 days of receiving a Right-to-Sue Letter from the EEOC.  *See* 42 U.S.C. §
2000e-5(f)(1); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996); *see also* 29
C.F.R. § 1614.407(a) (regulation providing that complainant may file civil action in an
appropriate United State district court "within 90 days of receipt of the final action on an
individual . . . complaint").  In this case, it is undisputed that Zustovich received two separate
EEOC Right-to-Sue Letters – the first dated April 2, 2008, the second dated May 14, 2008.  It is
also apparently undisputed that, if the time to file a federal suit were to be measured solely
according to the first notice, Zustovich's Title VII claims would be time-barred.  However, as the
timing requirements for filing a federal complaint are not jurisdictional, this Court retains

discretion to consider whether sufficient grounds exist to apply the doctrine of equitable tolling. *See Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 81 (2d Cir. 2003) (decision whether to equitably toll is reviewed for abuse of discretion); *Ghosh v. New York City Dep't of Health*, 413 F. Supp. 2d 322, 329 (S.D.N.Y. 2006); *Reyes v. North Shore-Long Island Jewish Health Sys.*, No. 00-CV-6400 (FB)(SAC), 2002 WL 31180961, at *2 (E.D.N.Y. Oct. 2, 2002) ("The ninety-day period is not a jurisdictional predicate, but a limitations period subject to equitable tolling.") (internal quotation marks and citation omitted).

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996).  In determining whether equitable tolling is applicable, the Court must consider whether the plaintiff has (1) acted with reasonable diligence during the time period she seeks to have tolled, and (2) proved that the circumstances are so extraordinary that the doctrine should be applied. *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506 F.3d 506, 512 (2d Cir. 2002); *see also Harrison v. Potter*, 323 F. Supp. 2d 593, 601 (S.D.N.Y. 2004) (finding general considerations to be weighed are "whether the plaintiff believes she has complied with the requirements, whether there is evidence of any affirmative misconduct on the part of the defendant, and whether the plaintiff received sufficient notice.").  The ultimate determination "seek[s] to balance the necessity of adhering to procedural requirements with equitable considerations of dismissing claims on technicalities." *Ghosh*, 413 F. Supp. 2d at 329.

Here, Defendants, relying on *Lo v. Pan American World Airways, Inc.*, 787 F.2d 827 (2d Cir. 1986) (*per curium*), contend that Zustovich is prohibited from bringing this action in federal court despite the issuance of the second Right-to-Sue Letter, and that she is not entitled to equitable tolling of the limitations period.  Defendants' reliance on *Lo* is misplaced, as the facts of that case are clearly distinguishable from those before the Court here.  The plaintiff in *Lo* did not file an action within the 90-day limitation period following his Right-to-Sue letter, and purposely filed a second EEOC complaint after the limitation period had expired in an attempt to circumvent the time limit. *Id.*  Here, Zustovich "did not engage in such chicanery." *Reyes*, 2002 WL 31180961 at *2 (distinguishing *Lo* where, after expiration of initial limitations period, plaintiff received a letter from NYSDHR allowing her to request subsequent EEOC review as of right, the product of which was a second Right-to-Sue Letter).  Rather, the facts of this case

persuade the Court that, on balance, this is an appropriate case for the application of equitable tolling.[1]

Here, the evidence indicates that Zustovich was diligent in pursuing her claims. As in *Ghosh*, where a second Right-to-Sue Letter was issued over a year after the first, "[t]he Court is satisfied that at the time [she] filed the instant action [Zustovich] believed [she] had complied with the necessary administrative steps and that [her] failure to file in a timely manner was not due to a lack of diligence." *Id.* at 330. Indeed, this case presents an even more compelling justification for the application of equitable tolling: here, the second Right-to-Sue Letter was issued within the 90-day period after the issuance of the first letter during which time Zustovich was initially required to file her federal complaint. The Court is satisfied that the receipt during the initial limitations period of a second notice indicating a new 90-day period to file suit is sufficient to have convinced Zustovich and her counsel that the limitations period had begun anew at the issuance of the second notice. The Fifth Circuit envisioned just this situation when it stated, in dicta, that "[i]f the second letter had been received within ninety days of the first letter, [plaintiff] might persuasively claim that he had failed to file suit within ninety days of the first letter because he was misled by the EEOC into believing he had ninety days from receipt of the second letter in which to filed suit." *Hefner v. New Orleans Public Serv.*, 605 F.2d 893, 896-97 (5th Cir. 1979). Indeed, the EEOC itself has no record of the issuance of the April 3 notice, and considers the May 14 notice the only official notice in this case. According to the EEOC's own reasoning, then, the instant complaint, filed 76 days after the issuance of the second Right-to-Sue Letter, was timely.

---

[1] The other cases on which Defendants rely are equally inapposite. In *Merkel v. ITT Financial Services*, 95-CV-818 (RSP/GJD), 1997 U.S. Dist. LEXIS 6144 (N.D.N.Y. Apr. 29, 1997), the 90-day period under the initial Right-to-Sue Letter had expired, and the plaintiff had apparently mistakenly received a second Right-to-Sue Letter more than four months after the first. *Id.* at *5-7. Additionally, the court found significant that plaintiff had conceded "that she believed she no longer had a right to sue by the time she received the second right-to-sue letter." *Id.* at *8. In *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336 (S.D.N.Y. 2006), the 90-day period under the initial Right-to-Sue Letter likewise had expired when plaintiff received the second letter. *Spencer v. New York City Transit Auth.* 99-7212, 1999 U.S. App. LEXIS 29682 (2d Cir. Nov. 5, 1999) is also distinguishable. In that case, the Second Circuit affirmed the district court's dismissal of a Title VII claim as time-barred where, because the respondent was a government agency, regulations accompanying Title VII provided that the EEOC was the agency charged with issuing a notice of right to sue. Therefore, although the plaintiff had received two Right-to-Sue Letters – one from the EEOC and one from the Attorney General's Office – the 90-day period ran from the date of the EEOC letter, which was received first. *See Spencer v. New York City Transit Auth.*, 95-CV-4779 (JG), 1999 U.S. Dist. LEXIS 408, at *38-40 (E.D.N.Y. Jan. 14, 1999).

**C.     Claims Against Defendants Other Than Harvard Are Not Dismissed For Failure to Exhaust Administrative Remedies**

Defendants bring their motion to dismiss "Plaintiff's Title VII, NYSHRL and NYCHRL claims against SPC, Sage, Mela and Lulanaj."  It is important, however, to note that Zustovich has not brought all of her claims against all of the Defendants.  Rather, the only Defendants against whom the Title VII claims are brought are Harvard, SPC and Sage.  On the other hand, Zustovich's claims under the New York State and City Human Rights Laws are brought against all of the Defendants.  Significantly, of these statutory causes of action, the *only* one that requires an exhaustion of remedies with regard to the named parties is Title VII – neither Executive Law § 296 nor the New York City Human Rights Law requires exhaustion of remedies.  *See* N.Y. Exec. L. § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages."); N.Y.C. Admin. Code § 8-502 (requiring only that plaintiff filing New York City Human Rights Law claim serve complaint on City before commencing action); *see also Branker v. Pfizer, Inc.*, 981 F. Supp. 862, 865 (S.D.N.Y. 1997) ("Branker's claim under the NYSHRL is not administratively barred, because that statute contains no requirement of administrative remedies."); *Hernandez v. New York City Dep't of Corp. Counsel*, No. 94 Civ. 9042, 1997 WL 27047, at *10 (S.D.N.Y. Jan. 23, 1997) ("Unlike Title VII, the NYSHRL and NYCHRL do not require exhaustion of administrative remedies.").  Therefore, to the extent Defendants' motion seeks to dismiss the state or city claims for failure to exhaust remedies with respect to the Defendants not named in the administrative complaint, such motion clearly must be denied.

As to the Title VII causes of action, however, the filing of a complaint with the EEOC or authorized state agency of a complaint naming the defendant is a jurisdictional prerequisite to commencing a Title VII action.  *See* 42 U.S.C. § 2000e-5(e); *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991).  Thus, a district court generally lacks subject matter jurisdiction over Title VII claims against a party not named in an administrative complaint.  *Id.*; *Harrington v. Hudson Sheraton Corp.*, 2 F. Supp. 2d 475, 477 (S.D.N.Y. 1998).  As a result, Defendants' bring their motion to dismiss Zustovich's Title VII claims for failure to name any of the Defendants other than Harvard as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).[2]

---

[2] On such a motion, "the court may resolve disputed jurisdictional facts by reference to evidence outside the pleadings, such as affidavits."  *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 933 (2d Cir. 1998) (internal citation omitted).

However, "[b]ecause these charges generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements, [courts] have taken a flexible stance in interpreting Title VII's procedural provisions, so as not to frustrate Title VII's remedial goals." *Johnson*, 931 F.2d at 209.  As a result, the Second Circuit has recognized an exception to the general rule that a defendant must have been named in the administrative complaint where the plaintiff proceeded *pro se* in the administrative proceeding and the unnamed party shares a "clear identity of interest" with the party that was named in the administrative complaint.[3]  *Id.*; *see also, e.g.*, *Gagliardi v. Universal Outdoor Holdings, Inc.*, 137 F. Supp. 2d 374, 379 (S.D.N.Y. 2001); *Harrington*, 2 F. Supp. 2d at 487; *cf. Olvera-Morales v. Sterling Onions, Inc.*, 322 F. Supp. 2d 211, 216-18 (N.D.N.Y. 2004) (applying identity-of-interest exception even where plaintiff was represented by counsel in agency proceeding).  To determine whether the identity-of-interest exception applies, a court must consider the following factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the [agency] complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the [agency] proceedings; 3) whether its absence from the [agency] proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Johnson*, 931 F.2d at 209-10.  In addition to these four factors, numerous courts have found that the Second Circuit in *Johnson* had also implied that another consideration is relevant to the identity-of-interest inquiry—whether, although not named as a respondent in the caption, the defendant is named in the body of the charges as having played a role in the discrimination.  *Tout v. Erie Comm. College*, 923 F. Supp. 13, (W.D.N.Y. 1995) (citing *Johnson*, 931 F.2d at 210); *Bridges v. Eastman Kodak Co.*, 822 F. Supp. 1020, 1025 (S.D.N.Y. 1993).  This multi-factor test is not a mechanical one, and no single factor is dispositive.  *Dortz v. City of New York*, 904 F.

---

[3] Some courts, including district courts in this Circuit, have also recognized a separate exception to the requirement that a party be named in the administrative complaint in cases in which, from the facts in the EEOC charge, "the agency could have inferred the named defendant and unnamed defendant were part of a common discriminatory scheme."  *Bright v. Le Moyne College*, 306 F. Supp. 2d 244, (N.D.N.Y. 2004) (citing *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977), *cert denied*, 449 U.S. 949 (1980)); *see also Gilmore v. Local 295*, 798 F. Supp. 1030, 1038 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 396 (2d Cir. 1994) (suggesting that plaintiffs can maintain a Title VII claim, without having named defendants in their EEOC charge, if EEOC could have inferred from facts alleged in the body of the complaint that the named and unnamed parties were acting in a common discriminatory scheme).

Supp. 127, 143 (S.D.N.Y. 1995); *Goyette v. DCA Advertising, Inc.*, 830 F. Supp. 737, 748 (S.D.N.Y. 1993).[4]

      The first *Johnson* factor is met where plaintiff could not ascertain the role of the unnamed defendant in the alleged discrimination through reasonable efforts.  The only relevant inquiry is what facts the plaintiff knew at the time the administrative complaint was filed.  *See Sharkey v. Lasmo (AUL Ltd.)*, 906 F. Supp. 949, 956 (S.D.N.Y. 1995).  At the time Zustovich filed her complaint with the DHR, she did not know, nor could she reasonably have been expected to know, the relative roles of the various parties with respect to her employment.  Zustovich alleged discrimination by her two direct supervisors in her DHR complaint – Lulanaj, an SPC employee, and Mela, a Harvard employee.  Zustovich was hired officially by Harvard; therefore, she had no reason at the time to believe that Lulanaj, her most direct supervisor, was employed by a different company.  Indeed, at her Union grievance hearing in 2006, she was informed that Mela, a Harvard employee, had "hired" Lulanaj; this reinforced Zustovich's belief that Lulanaj, too, was employed by Harvard.  Furthermore, Zustovich was not made aware until *after* she filed her administrative proceeding that Sage was the party that ultimately issued the directive to terminate her.  In accordance with the Second Circuit's instruction to grant lenity to *pro se* litigants unversed in the technicalities of Title VII procedures, this Court finds that Zustovich should not be denied, at this early stage in the litigation, an opportunity for the merits of her claims to be heard.

      The second factor is satisfied where the unnamed party's interests were represented adequately at the administrative proceeding.  *Sharkey*, 906 F. Supp. at 956.  With respect to this factor, courts have taken into consideration that the named and unnamed parties were represented by the same legal counsel.  *See Goyette*, 830 F. Supp. at 748.  It is apparent from the evidence that at all times, all of the Defendants were represented by the same counsel.  Moreover, Lulanaj was present at the agency investigative proceeding, represented by counsel.  Although it has been represented that he was only present as a witness, the Court finds that there is sufficient evidence to show that the unnamed parties' interests were adequately represented in the agency proceeding.

---

[4] Although defendants initially represented to the Court that Zustovich was represented by counsel at the administrative proceeding—by Ms. Linda Ayers—they have subsequently disavowed that position, upon learning that Ms. Ayers is not, in fact, an attorney, but merely appeared at the DHR investigative proceeding as a witness on Zustovich's behalf.  Therefore, Zustovich having proceeded *pro se* at the time she filed her DHR complaint, the Court has no trouble finding that the identity-of-interest exception is applicable here.

Courts have found the third factor of the identity-of-interest analysis to be satisfied where the agency in which the plaintiff filed his or her administrative charge took no conciliatory action. *See Goyette*, 830 F. Supp. at 748 (because EEOC took no action on the complaint, unnamed party suffered no actual prejudice by not being named in EEOC complaint). By definition, then, where there is no conciliatory action in the agency proceeding, there is no prejudice to the unnamed party. Here, neither the DHR nor the EEOC took any conciliatory action; in the absence of any other evidence of actual prejudice presented by the unnamed Defendants, the Court finds that the third factor weighs in favor of a finding of identity of interest.[5]

In considering the fourth factor, courts often look to the nature of the relationship between the named and unnamed parties—e.g., whether there is an agent-principal relationship such that the unnamed party may be charged with the acts of the named party. *See Bridges*, 822 F. Supp. at 1025. In this case, the affiliation among Sage, SPC and Harvard was in the nature of a contactor-subcontractor relationship. This in itself is likely sufficient, at this early stage, to satisfy the fourth factor. Moreover, when Zustovich was informed at an earlier union grievance conference that Mela had "hired" Lulanaj, this was a representation that the relationship between the parties was sufficiently close to allow the claims against the unnamed parties to proceed in this action.

Finally, with regard to the implicit fifth *Johnson* factor, it is worth noting that Zustovich's DHR complaint explained in detail her allegations of discriminatory misconduct on the part of Lulanaj. Although individuals may not be held liable under Title VII, *e.g.*, *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004), the naming of Lulanaj, an SPC employee, in the agency complaint should have given SPC notice that it was potentially liable for Lulanaj's conduct.

Defendants have made some noise as to the facts that Zustovich subsequently has learned with regard to the relationship among the named and unnamed parties, and the detail with which

---

[5] The Court does not credit Defendants' argument that, due to the lapse in time between the filing of the DHR complaint and service of the Complaint in this action, the unnamed Defendants are prejudiced because they may be unable to locate witnesses or documents, and that "their memories of the allegations and potential defenses thereto may be poor." There is no limitation on the period between the filing of the administrative complaint and the filing of a federal complaint – rather, as detailed above, the only statute of limitation relevant to this case is the period of time between the issuance of a Right-to-Sue Letter and the filing of the federal complaint. Moreover, the nature of federal litigation is such that cases are often not litigated until a year or more after the relevant events occurred. This Court therefore rejects the Defendants' argument that such lapse in time constitutes actual prejudice.

this relationship is spelled out in the federal complaint.  However, as this Court previously has observed,

> [w]hile the defendants make much of what the plaintiff[] may or may not have learned about [the relationship between the named and unnamed parties] in the time between the filing of the [agency] complaint and the filing of this action in this Court, these facts are not really relevant to our inquiry.  What is important is that [the unnamed party] received adequate notice of these charges and suffered no actual prejudice as a result of the plaintiff[] not naming [them] in the [agency] complaint.

*Goyette*, 830 F. Supp. at 748.  Based on the facts in the record, and in view of the relevant factors set forth in *Johnson*, this Court is satisfied that there is an adequate identity of interest among the named Defendant Harvard and the unnamed Defendants SPC and Sage.  Accordingly, Defendants' motion to dismiss Zustovich's Title VII claims against SPC and Sage is denied.

**D.     Zustovich's Race and Age Discrimination and Hostile Work Environment Claims Are Not Dismissed for Failure to Exhaust Administrative Remedies**

Defendants' third proffered argument in favor of dismissal is easily disposed of. Defendants argue that Zustovich's claims of age and race discrimination and hostile work environment under the New York State Executive Law and New York City Human Rights Laws must be dismissed because they were not raised first in the administrative complaint, and therefore Zustovich failed to exhaust her administrative remedies with respect to those claims. Although Defendants devote several trees to whether the claims of age and race discrimination and hostile work environment are sufficiently "reasonably related" to the national origin and retaliation claims Zustovich made in her administrative complaint, *see Butts v. City of New York Dep't of Housing Preservation and Dev.*, 990 F.2d 1397 (2d Cir. 1993), such arguments are irrelevant here.  As explained above, neither the State nor City Human Rights Law requires an exhaustion of remedies prior to the filing of a lawsuit.  *See* N.Y. Exec. L. § 297(9); N.Y.C. Admin. Code § 8-502; *see also Branker*, 981 F. Supp. at 865; *Hernandez*, 1997 WL 27047 at *10.  Thus, Defendants' contention that, absent a showing of reasonable relatedness, Zustovich's claims not previously made in her administrative complaint must be dismissed is simply wrong. Defendants' motion in this regard is denied.

**E.     Zustovich's Race Discrimination Claims Under State and City Human Rights Laws**

While not expressly withdrawing her race discrimination claims under the City and State Human Rights Laws, Zustovich (through her counsel) has represented to the Court that she

acknowledges that the question of whether the claims have been pled adequately is a close one. Therefore, because her race discrimination claims under Section 1981 will survive regardless of the Court's finding on the City and State claims (both because she believes she has adequately pled that claim, and because Defendants have not moved this Court to dismiss it), Zustovich has represented that she does not object to the dismissal of the race discrimination claims under the City and State Human Rights Laws. The Court agrees that the question of whether these claims have been adequately pled, even under the liberal pleading standard set forth in *Swierkiewicz*, is a close one – therefore, presented with no objection from Zustovich, the Defendants' motion to dismiss the City and State claims of race discrimination is granted.

**F.      Zustovich's Hostile Workplace Claims under State and City Human Rights Laws**

         In support of their motion to dismiss Zustovich's hostile work environment claims, Defendants cite extensively to the standard set forth in the U.S. Supreme Court's decision in *Harris v. Forklift Sys.*, 510 U.S. 17 (1993), where the Court found that a hostile work environment claim requires a showing that "the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 21. However, the standard set forth in *Harris* concerned a hostile work environment under Title VII, not the relevant provisions of the New York State or City Human Rights Laws. *See id.* While it is true that courts in this Circuit have tended to analyze discrimination claims under Title VII and those under the New York State Human Rights Law and the New York City Human Rights law similarly, s*ee, e.g.*, *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216-17 (2d Cir. 2005); *Selmanovic v. NYSE Group, Inc.*, No. 06 Civ. 3046 (DAB), 2007 WL 4563431, at *4 (S.D.N.Y. Dec. 21, 2007), the New York City Human Rights Law was intended to be more protective than its state and federal counterpart. *Farrugia v. North Shore Univ. Hosp.*, 13 Misc. 3d 740, 747 (N.Y. Sup. Ct. 2006); *Jordan v. Bates Advertising, Inc.*, 11 Misc. 3d 764, 770 (N.Y. Sup. Ct. 2006) (observing that "in enacting the more protective Human Rights Law, the New York City Counsel has exercised a clear policy choice which this Court is bound to honor. The Administrative Code's legislative history clearly contemplates that the New York City Human Rights Law be liberally construed with the aim of making it the most progressive in the nation"). Thus, this Court previously has found that while "under the Federal and New York State counterparts a plaintiff must also show that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment . . . under the

City's law, liability should be determined by the existence of unequal treatment and questions of severity and frequency reserved for considerations of damages." *Selmanovic*, 2007 WL 4563431 at *4 (quoting *Farrugia*, 13 Misc. 3d at 748-49) (internal alterations omitted).  Indeed, the Appellate Division recently has held that the 2005 amendments to the City Human Rights Law

> now explicitly requires an independent liberal construction analysis in all circumstances, even where State and federal civil rights laws have comparable language.  The independent analysis must be targeted to understanding and fulfilling what the statute characterizes as the City HRL's 'uniquely broad and remedial' purposes, which go beyond those of counterpart State or federal civil rights laws.

*Williams v. New York City Housing Auth.*, 2009 NY Slip Op 440, at *3-4 (1st Dep't Jan. 27, 2009); *id.* at *9 ("[T]he Council formally and unequivocally rejected the assumption that the City HRL's purposes were identical to that of counterpart civil rights statutes.  In its place, the Counsel instructed the courts – reflected in the text and legislative history – that it wanted the City HRL's provisions to be construed more broadly than federal civil rights laws and the State HRL, and wanted the local law's provisions to be construed as more remedial than federal civil rights laws and the State HRL.").

Zustovich's only claims for discrimination based on a hostile work environment a brought under the New York State and City Human Rights Laws.  I agree with Defendants that Zustovich's allegations fall below the pleading threshold for showing a hostile work environment claim under the State Human Rights Law, as that claim would be analyzed under the "sufficiently severe or pervasive" standard set forth in *Harris*.  However, in view of the foregoing authority of the relevant state courts interpreting the City Human Rights Law, I find that, especially at this early stage of litigation, dismissal of the City claim for hostile work environment is inappropriate.  Under the liberal pleading standard and protective nature of the City Human Rights Law, Zustovich has adequately pled the existence of unequal treatment to survive a motion to dismiss on this ground.  *See Selmanovic*, 2007 WL 4563431 at *4.

For the foregoing reasons, Defendants' motion to dismiss Zustovich's race discrimination claims under the New York State Human Rights Law and New York City Human Rights Law is granted. Plaintiff's claim for hostile work environment under the New York State Human Rights Law is also dismissed. The balance of Defendants' motion to dismiss is denied. Defendants shall file an answer to Zustovich's Complaint within 10 days of the date of this Opinion and Order.

**IT IS SO ORDERED.**
**New York, New York**
**March 20, 2009**

_____
U.S.D.J.

17